**United States District Court**
For the Northern District of California

1

2

3

4                                                    **E-FILED on** ___4/2/10___

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                               SAN JOSE DIVISION

11

12   SANTIAGO HERNANDEZ, et al.,              No. C-08-03404 RMW
     individually and on behalf of all others
13   similarly situated, and on behalf of the general
     public,
14                                             ORDER GRANTING MOTION TO
                     Plaintiffs,               DECERTIFY CONDITIONAL FLSA CLASS
15
           v.
16                                             **[Re Docket Nos. 114, 115, 116, 121]**
     UNITED AUTO CREDIT CORPORATION,
17   and DOES 1-50, inclusive,

18                   Defendants.

19

20         Plaintiffs contend that defendant United Auto Credit Corporation ("UACC") inappropriately

21   classified them as exempt employees under state and federal law and thereby deprived them of

22   overtime pay.  On March 20, 2009, this court granted plaintiffs' motion to conditionally certify a

23   collective action under the Fair Labor Standards Act ("FLSA").  UACC now moves to decertify the

24   conditional class.  Plaintiffs move for partial summary judgment, seeking, among other things, an

25   adjudication that plaintiffs are not exempt employees.  Plaintiffs also seek leave to file a second

26   amended complaint whereby plaintiffs could individually assert their state law claims in this action.

27   Finally, UACC submits that plaintiffs' partial summary judgment motion is premature and should be

28   denied or at least continued.  For the reasons stated below, the court grants the motion to decertify

     ORDER GRANTING MOTION TO DECERTIFY CONDITIONAL FLSA CLASS—No. C-08-03404 RMW
     JAS

1   the collective action.  The court denies plaintiffs' motion to file a second amended complaint and

2   motion for summary judgment as moot.

3                                    **I. BACKGROUND**

4        UACC is an automobile financing company.  Radrigan Dep. 13:5-12 , Jan. 13, 2009.  UACC

5   has car-dealer clients who forward applications of customers who need financing to purchase a car.

6   *Id.* at 13:13-19.  In 1996, UACC had a total of four branch offices, and as of January 2009, it had

7   approximately 60 branch offices.  *Id.* at 16:1-9.  At its maximum in mid-2007, UACC had 146

8   branch offices.  *Id.*

9        UACC's goal in each branch was to have eight employees with the following job titles:

10       1.     Branch Manager

11       2.     Assistant Branch Manager

12       3.     Collections Supervisor  (also called a "Senior Account Representative" or "Senior

13              Collector")

14       4.     Administrative Supervisor (also called a "Senior Customer Service Representative")

15       5.     Account Representative 1 (also called a "Collector")

16       6.     Account Representative 2

17       7.     Administrative Coordinator 1 (also called a "CSR")

18       8.     Administrative Coordinator 2

19  *See* Def.'s Mot. Decertify 2.  In 1996, when the branches were set up, Branch Managers, Assistant

20  Branch Managers, Collections Supervisors, and Administrative Supervisors were all classified as

21  exempt under the FLSA.  Radrigan Dep. 72:1-13.  These classifications have not changed since

22  1996. *Id.* at 77:6-10.  Job descriptions were drafted at UACC's corporate headquarters and are the

23  same nationwide.  Ekizian Dep. 94:17-23, 188:3-12, Jan. 27, 2009.  Plaintiffs are a group of past and

24  present UACC employees who contend that they were improperly classified as exempt and deprived

25  of overtime compensation and other benefits.  Compl. ¶ 1.

26       The court conditionally certified the following class: "All persons who are or have been

27  employed by Defendant United Auto Credit Corporation as 'Collections Supervisors,' 'Senior

28  Collectors,' 'Senior Account Representatives,' 'Senior Customer Service Representatives,' and/or

**United States District Court**
**For the Northern District of California**

ORDER GRANTING MOTION TO DECERTIFY CONDITIONAL FLSA CLASS—No. C-08-03404 RMW
JAS                                                        2

1   'Administrative Supervisors,' at any time [from] three years prior to the filing of this Complaint, to

2   the final disposition of the case."  UACC now moves to decertify the class, contending that the

3   duties of the Collections and Administrative Supervisors differ too significantly for class

4   certification to be appropriate under FLSA.

## II.  ANALYSIS

### A.   Legal Standard for Conditional Certification and Decertification of Collective Actions under FLSA

An action for violation of the FLSA may be maintained "by any one or more employees for

and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Section 216(b) of the FSLA also requires that an employee wishing to be a plaintiff must opt-in and

file a consent with the court.  *Id.*  The statute does not define the term "similarly situated," and the

Ninth Circuit has yet to interpret this phrase.  *See Leuthold v. Destination America*, 224 F.R.D. 462,

467 (N.D.Cal. 2004).  But most courts interpreting Section 216(b) have used a two-step approach.

*See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001) ("The two-tiered

approach to certification of § 216(b) opt-in classes . . . appears to be an effective tool for district

courts to use in managing these often complex cases, and we suggest that district courts in this

circuit adopt it in future cases."); *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082

(C.D.Cal. 2002) (citing *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102-03 (10th

Cir. 2001) and *Bayles v. American Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1067 (D.Colo.

1996)); NEWBERG ON CLASS ACTIONS § 24:3 (4th ed. 2008).

Under the two-step approach, the court first considers whether to certify a collective action

and permit notice to be distributed to the putative class members.  *See Thiessen*, 267 F.3d at 1102;

*Russell v. Wells Fargo & Co.,* 2008 WL 4104212, at *2-3 (N.D.Cal. Sept. 3, 2008).  At this first

stage, the standard for certification is fairly easy to satisfy. Courts have required only "substantial

allegations, supported by declarations or discovery, that the putative class members were together

the victims of a single decision, policy, or plan." *Russell*, 2008 WL 4104212, at *2.

At the second stage, after discovery has been taken, the court may decertify the class if it

concludes that the class members are not similarly situated.  *Id.* at *3.  The court can consider a

number of factors in deciding whether an action should ultimately proceed collectively, including:

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various

defenses available to the defendant and whether they appear to be individual to each plaintiff; (3)

fairness and procedural considerations; and (4) whether plaintiffs made the required filings before

filing suit. *Thiessen*, 267 F.3d at 1103.  However, a requirement that the class members be identical

would be inconsistent with the intent of FLSA's provision that a case can proceed as a collective

action.  *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1361 (S.D.Fla. 2007).

**B.      Decertification of Plaintiffs' Collective Action**

**1.      Exempt Employees**

The FLSA specifies that its minimum wage and overtime provisions do not apply to

employees "employed in a bona fide executive capacity."  29 U.S.C. § 213(a)(1).  Employees fall

within this executive exception when they are:

> (1)     Compensated on a salary basis at a rate of not less than $455 per week . . . ;
>
> (2)     Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3)     Who customarily and regularly directs the work of two or more other employees; and
>
> (4)     Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  With respect to the requirement that the employee's primary duty be

management, the regulations provide a lengthy, non-exhaustive list of managerial activities.[1]  For

---

[1] "Generally, 'management' includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures." 29 C.F.R. § 102.

ORDER GRANTING MOTION TO DECERTIFY CONDITIONAL FLSA CLASS—No. C-08-03404 RMW
JAS                                                                4

**United States District Court**
For the Northern District of California

1   those activities to constitute an employee's "primary duty," they must be "the principal, main, major

2   or most important duty that the employee performs." 29 C.F.R. § 700.

> Determination of an employee's primary duty must be based on all the
> facts in a particular case, with the major emphasis on the character of
> the employee's job as a whole. Factors to consider when determining
> the primary duty of an employee include, but are not limited to, the
> relative importance of the exempt duties as compared with other types
> of duties; the amount of time spent performing exempt work; the
> employee's relative freedom from direct supervision; and the
> relationship between the employee's salary and the wages paid to other
> employees for the kind of nonexempt work performed by the
> employee.

*Id.* As is apparent from the above factors, the assessment of whether an employee falls into the

executive exception is an individual and fact-intensive inquiry and necessitates a careful factual

analysis of the full range of the employee's job duties and responsibilities. *See Mike v. Safeco Ins.*

*Co. of America*, 274 F. Supp. 2d 216, 220 (D.Conn. 2003).

### 2.       The "Ratio Requirement"

Before considering the factors relevant to the substantive merits of the motion to decertify,

the court briefly deals with an argument made by plaintiffs at oral argument regarding the FLSA's

purported requirement that there be a "ratio between executives and workers." Rough Tr. 4. Under

the FLSA, plaintiffs stated, "at a minimum you need to have two workers for every executive.

They're on the wrong side of the ratio, and they're not even close. They have a five – they have five

executives for three or four workers, and they need to have two workers for every one executive."

*Id.*

Plaintiffs' argument overstates the requirement of the pertinent FSLA regulation. Plaintiffs

are correct that in order to qualify for the executive exemption, an employee must "customarily and

regularly direct[ ] the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). The

language of the regulation, however, does not require a strict mathematical ratio between an

"employee employed in a bona fide executive capacity" and "other employees." All the regulation

requires is that an *employee* customarily or regularly direct the work of *two or more other*

*employees*. The other employees whose work the executive directs may or may not themselves be

executives. Thus, the FLSA does not create a "ratio requirement." Whether the present conditional

ORDER GRANTING MOTION TO DECERTIFY CONDITIONAL FLSA CLASS—No. C-08-03404 RMW
JAS                                                                                                      5

**United States District Court**
For the Northern District of California

1   class should be decertified, then, depends on the individualized assessment of whether the class

2   members are "similarly situated."  The court now turns to that inquiry.

### 3.   The Conditional Class Members Are Not "Similarly Situated"

#### a.  Disparate Factual and Employment Settings of Individual Plaintiffs

5   In its motion to decertify, UACC offers evidence of the variety of job responsibilities that

6   Collections Supervisors and Administrative Supervisors have had at UACC branches.  Def.'s Mot.

7   Decertify 3-12.  Approximately 120 Collections Supervisors and Administrative Supervisors from

8   77 different branches have opted in to the present action.[2]  UACC describes the practices of thirteen

9   Collections Supervisors and six Administrative Supervisors in its motion to decertify, and among

10  those that UACC presents, there is a fairly wide variety of managerial responsibilities.  *Id.*

11  Collections Supervisors Santiago Hernandez, Jesus Romero, and Amber Brown, for example, do not

12  appear to have had many, if any, supervisory duties.  *Id.* at 3, 6.  On the other hand, Carlos Zavala,

13  Sharon McNair, and Dorian Lanier do supervise collectors, review and advise the work of

14  subordinates, and have some say in hiring and promotion decisions.  *Id.* at 6-9.

15  Plaintiffs respond that common evidence can establish that management was not the primary

16  duty of class members.  Plaintiffs' opposition, however, focuses not on the job responsibilities of

17  class members, but on the duties of the Branch Manager and Assistant Branch Manager.  The

18  Branch Manager and Assistant Branch Manager, plaintiffs argue, "manage" all of the employees in

19  the office while the employees at issue – the Collections and Administrative Supervisors – only

20  "supervise" subordinate employees.  Opp'n Mot. Decertify 2-14.  Plaintiffs offer significant

21  evidence, in the form of job description documents and testimonial descriptions, that the Branch

22  Managers and Assistant Branch Managers have substantial managerial responsibilities.  But the

23  exempt status of the Branch and Assistant Managers is not the dispositive issue in this suit; the

24  exempt status of the Collections and Administrative Supervisors is.  Plaintiffs' argument appears to

25  rely on the inference that if Branch Managers and Assistant Branch Managers "manage" employees,

26  then Collections and Administrative Supervisors must not.  However, plaintiffs provide no basis for

27

28  [2]  UACC says that there have been several hundred Collections and Administrative Supervisors over
the past three years.  Def.'s Mot. Decertify 1.

ORDER GRANTING MOTION TO DECERTIFY CONDITIONAL FLSA CLASS—No. C-08-03404 RMW
JAS                                                                                          6

**United States District Court**
For the Northern District of California

1   drawing such an inference and provide no support for their contention that supervisors "supervise"

2   and do not "manage."  In fact, the balance of UACC's evidence in support of decertification is

3   directed at establishing that in many cases the supervisors did in fact engage in activities defined

4   under FLSA as "managerial."  *See* Def.'s Mot. Decertify 3-12.  Although job descriptions come from

5   corporate headquarters and are used nationwide, the actual work performed by employees varies

6   significantly from branch to branch.  This variation appears to result from the fact that UACC has

7   experienced significant employee turnover and numerous mergers and closures of branches.  *See*

8   Radrigan Dep. 15:1-16:9.

9           In response to the evidence of the lack of uniformity of the duties of Collections and

10   Administrative Supervisors, plaintiffs point out that, in the same branches where supervisors are

11   alleged to have significant managerial responsibilities, the Branch and Assistant Managers manage

12   employees.  Opp'n Mot. Decertify 19-22.  In short, the only evidence that plaintiffs offer to rebut the

13   specific testimony that supervisors had managerial responsibility is that their managers also had

14   supervisory responsibility.  *Id.*  Plaintiffs state that "[a]pparently, there is quite a bit of supervising

15   happening in that one department."  *Id.* at 19.  Ultimately, plaintiffs provide the court with little

16   more than skepticism that four out of eight employees would perform primarily managerial duties.

17           Plaintiffs point to the fact that defendants' job descriptions are drafted at its corporate

18   headquarters in a collaborative effort among its officers, that the job descriptions are the same for

19   each branch, Ekizian Dep. 94:17-23, 188:3-12, and that UACC treats all Collections Supervisors and

20   Administrative Supervisors as exempt.  However, the recent decision of *In re Wells Fargo Homes*

21   *Mortg. Overtime Litig.*, 571 F. 3d 953 (9th Cir. 2009), which involved certification under Federal

22   Rule of Civil Procedure 23(b)(3), cautions against placing too much weight on an internal policy of

23   classifying all members of a particular class of employees as exempt.  The Ninth Circuit reversed the

24   district court's class certification because the court placed too much weight on Wells Fargo's uniform

25   policy rather than examining what duties the class members actually performed.  *Id.* at 959.

26                              **b.  Defenses Available Against Individual Plaintiffs**

27           Defendant UACC argues that its statute of limitations defense will apply differently to the

28   various plaintiffs.  Although there might be disputes as to when a particular employee worked for

ORDER GRANTING MOTION TO DECERTIFY CONDITIONAL FLSA CLASS—No. C-08-03404 RMW
JAS                                                      7

**United States District Court**
For the Northern District of California

1  UACC or whether any FSLA violation was willful as to a particular plaintiff (thus resulting in a

2  three year limitation as opposed to two), such disputes would not be a major impediment to a

3  collective action.  The periods of employment in most cases would likely be subject to agreement or

4  easily verifiable proof.  The willfulness question would probably, in most cases, be capable of

5  resolution on a class-wide basis.  Therefore, the limited risk of having to deal with individualized

6  defenses does not weigh against a collective action in this case.

7                          **c. Fairness and Procedural Considerations**

8          The court cannot overlook the fact that a primary goal of Section 216 of the FLSA is to

9  implement the broad remedial purposes of the FSLA.  If the parties agreed as to the duties performed

10  by plaintiffs, or reliable evidence showed that employees performed substantially similar work, a

11  collective action under Section 216 would clearly be appropriate.  However, here, where there

12  appears to be substantially different employment experiences among the various Collections and

13  Administrative Supervisors, the procedural advantages of a collective action cannot be realized.  It

14  appears that many supervisors did have significant managerial duties, such that case by case

15  determinations as to the propriety of their exempt status will be necessary.  It is difficult to see how a

16  class action could proceed fairly and efficiently, given that each plaintiff's work situation will have

17  to be examined to see what duties he or she performed.  The potential for a class-wide ruling on

18  liability seems slim.  And even if liability could be determined on a class-wide basis, the court

19  would still face the prospect of having to determine individualized damages.

20          **4.      Conclusion**

21          The court concludes that this action should not proceed collectively and therefore grants

22  UACC's motion to decertify the conditional class.

23          **C.      Other Motions**

24          Plaintiffs also move for leave to file a second amended complaint and for partial summary

25  judgment.  UACC moves to deny or continue plaintiffs' motion for summary judgment pursuant to

26  Federal Rule of Civil Procedure 56(f).  Because plaintiffs' summary judgment motion seeks

27  summary judgment that UACC cannot prove an affirmative defense on a class-wide basis, the court's

28  conclusion that the class should be decertified renders the summary judgment motion moot.

**United States District Court**
For the Northern District of California

1      Furthermore, plaintiffs apparently do not wish to amend their complaint if the collective

2   action is decertified.  Plaintiffs' counsel has stated in an email that: "If the Court decertifies,

3   California Plaintiffs will assert their state claims in the district in which they file."  Decl. Chad

4   Anderton Supp. Opp'n Mot. Amend Ex. 2.

5                                    **III.  ORDER**

6      For the foregoing reasons, the court grants UACC's motion to decertify the conditional class.

7   This order does not preclude possible joinder of parties, such as Administrative Supervisors at a

8   particular branch, in individual actions.  The court denies plaintiffs' motion for partial summary

9   judgment and motion to file a second amended complaint as moot.  UACC's 56(f) motion is also

10  denied as moot.

11

12  DATED:      3/31/10                                    _Ronald M Whyte_

                                                           RONALD M. WHYTE
13                                                         United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING MOTION TO DECERTIFY CONDITIONAL FLSA CLASS—No. C-08-03404 RMW
JAS                                                9

**United States District Court**
For the Northern District of California

1     **Notice of this document has been electronically sent to:**

2     **Counsel for Plaintiffs:**

3     Matthew C Helland        helland@nka.com
      Donald H. Nichols         nichols@nka.com
4     Jodi Lynn Collova         collova@nka.com
      Michelle R. Fisher         fisher@nka.com
5     Paul J. Lukas             lukas@nka.com

6     **Counsel for Defendant:**

7     Maria R. Harrington      mharrington@littler.com
      Daniel Chad Anderton     canderton@littler.com

8

9     Counsel are responsible for distributing copies of this document to co-counsel that have not
      registered for e-filing under the court's CM/ECF program.
10

11

12    **Dated:**        4/2/10                             CCL
                                                 **Chambers of Judge Whyte**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING MOTION TO DECERTIFY CONDITIONAL FLSA CLASS—No. C-08-03404 RMW
JAS                               10